274 P.2d 588

James P. ENGLISH, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, and

Phelps Dodge Corporation, Defendant-Employer, Respondents.

No. 5816.

Supreme Court of Arizona.

Oct. 4, 1954.

Richey & Herring, Tucson, for petitioner.

John R. Franks and Robert E. Yount, Phoenix, for respondent Industrial Commission.

Evans, Hull, Kitchel & Jenckes, Phoenix, for respondent Phelps Dodge Corp.

WINDES, Justice.

In September, 1944, James P. English, petitioner herein, after physical examination

including x-ray of the chest was employed as a welder by the Phelps Dodge Corporation, respondent-employer. There was evidence which would support the contention of petitioner that about April 6, 1945, while welding a patch on the "acid roasters", he was exposed to certain irritating gases resulting in his becoming ill, spitting and coughing blood and experiencing pains in his chest and joints. On April 14, 1945, after physical examination including chest X-ray he was advised he had not suffered an industrial accident and was ordered back to work and continued such employment until April 30, 1945, when he quit and went to work on a ranch. Thereafter, he was employed as a welder by another employer, but his health progressively deteriorated. He claimed to believe he was suffering from tuberculosis until April, 1950, at which time he learned to the contrary and in May, 1950, filed claim with the Industrial Commission of Arizona for compensation on the ground that the inhalation of gases in April, 1945, was the cause or contributing cause of his present disabled condition.

Originally, the commission refused to accept jurisdiction because the application was not filed within one year from the date of injury as required by section 56–967, A.C.A. 1939. Following certiorari to the commission this court held that an employee was not bound by the one-year limitation when in the exercise of reasonable care he was unable to make a correct diagnosis of his injury and sent the matter back to the commission for determination whether on hearing he could free himself from such limitation. English v. Industrial Commission, 73 Ariz. 86, 237 P.2d 815. Such hearing was held, resulting in an award that the claim was unenforceable because not filed within one year as required by the aforesaid statute and that petitioner had not suffered any injury by accident arising out of and in the course of his employment. We issued certiorari.

As grounds for setting the award aside, petitioner contends: (1) that English v. Industrial Commission, supra, is the law of the case, and that the commission ignored the facts as established by the testimony of petitioner and further ignored the opinions of doctors as to medical facts; (2) that petitioner was denied due process of law in that the commission did not have before it for consideration the report of the commission's referee prior to making the award; and (3) that the award is not supported by the evidence.

The contention that the former case of English v. Industrial Commission is the law of the case is entirely without merit as even a cursory reading thereof will demonstrate. That the referee's report was not considered by the commission is refuted by the commission on rehearing wherein it finds that the report was before it at all times during its consideration of the cause. Petitioner presents nothing that would warrant this court in determining that the commission deliberately and falsely made this finding. We will not further consider this matter.

There is thus left for consideration only the question of whether the award is supported by any substantial evidence and whether the commission ignored established facts.

In January, 1952, the commission ordered petitioner to report to Tucson, Arizona, for examination and investigation, including hospitalization if necessary. Five doctors conducted the investigation which included a consideration of the alleged history of the accident and examination of x-ray pictures. These doctors were of the view there was a causal connection between the inhalation of gas and petitioner's present disability. At the request of respondent-employer, the petitioner was personally examined by Dr. Melick. Drs. Kennedy and Watkins examined the following x-rays: the two heretofore mentioned as taken in 1944 and 1945, and three taken on March 3, 1950, January 11, 1952 and March 7, 1952, respectively. The latter two doctors rendered reports of their analysis thereof.

Dr. Melick reports an examination of the patient and the history of the case as reflected in the Industrial Commission file and an examination of the x-rays and concludes his report as follows:

"The report by Dr. Kennedy indicates that there were definite abnormal changes present in both the right and left lungs of this individual in September of 1944, some seven months before the patient was exposed to the yellow smoke. This finding leaves a very definite doubt in my mind that he was in perfectly good health at the time he was exposed to the smoke. Such being the case, I believe this individual has exhibited the type of progressive pulmonary change that I would expect in an individual who is afflicted (as the x-ray of 1944 reveals) with a combination of emphysema and bronchiectasis. I furthermore do not feel that his exposure to the smoke, as related in the history, has any direct relationship with his present condition. I think his present condition is one of natural progression of his pulmonary disease, and any irritation he might have suffered as a result of exposure to smoke was of a temporary nature only."

Later, Dr. Melick filed another report which indicates that the x-ray of 1945 was not examined by him originally, and after stating another review of the voluminous file and the x-rays, he concludes:

"A review of the one additional x-ray that I did not see at my first examination of the file and x-rays on this man indicates to me that the film of April, 1945, is quite comparable to the film of September, 1944. I believe both of these chest films are abnormal. However, I think in order to complete the record this film of April 13, 1945, should be read by Dr. Kennedy (who gave the reading on the x-rays primarily) so that we may have his interpretation for the record."

Subsequent to these reports Drs. Melick and Watkins were summoned to testify and were thoroughly examined by counsel. While counsel for petitioner argues extensively with Dr. Melick concerning the true facts, a hypothetical question assuming all possible facts in favor of petitioner was submitted requesting an answer as to whether in his opinion, based on such assumptions, there was a connection between the inhalation of gases and the patient's present disability. Dr. Melick's answer was as follows:

"The only way to go about it is this: If we assume this man was perfectly well when he went to work; if we assume that he had got an injurious dose of noxious fumes and was immediately thereafter disabled and remained permanently disabled thereafter, then I say Yes, it was absolutely due to the fumes he inhaled, but the clinical evidence shows that he was not well before he went to work, the x-rays prove that. Secondly, the x-rays also prove that subsequent to the inhalation of these noxious fumes he did not give x-ray evidence as he should have given at the end of ten days that would indicate that he had inhaled noxious fumes and the subsequent course of this has indicated that it is one of progression, an emphysematous chest that I would expect from a man that had emphysema and had nothing to do with noxious fumes at all."

The effect of Dr. Watkins' testimony was that whatever petitioner inhaled, any damage resulting therefrom would be temporary. The doctor said that before petitioner went to work he had emphysema which would eventually break him whether he inhaled irritants or not. He further testified:

"Q. And if he did have an acute bronchitis and thereafter his physical condition immediately began to get worse until within a year he is in the condition approximately unable to work, approximately in the condition he is in now, it has been worse for a year or so, wouldn't the exposure to the gas and wouldn't the bronchitis have anything to do with it? A. It would have a temporary aggravation if he inhaled that irritant and if it irritated him enough to give him a bronchitis but I can't see how that would disable him."

*    *    *    *    *

"Q. And this exposure to gas and the resultant description of what happened to him, the symptoms he had, would that be enough to set in motion this incipient disability so that thereafter he would be disabled? A. I don't think the comparison of those films would bear that out. *    *    *"

*    *    *    *    *

"Q. Suppose in the year that followed this exposure to gas this man lost considerable weight; became a sick man, was unable to work at heavy

work, what would you say then, if he was your patient and you were seeing him every week or so? A. I would tell him that gas didn't have anything to do with his illness, that he had a progressive emphysema and forget the gas, if he was my private patient.

"Q. You would? A. Yes.

"Q. You would say the exposure to gas had nothing to do with it. A. Nothing more than a temporary symptom which would not have any permanent damaging effect on him. * *"

The effect of the foregoing testimony is that the petitioner at the time of his employment was suffering from a lung ailment, to wit: emphysema, and his present disability is by reason of a progressive worsening of that condition, unaffected by the inhalation of gas in 1945. This renders legal the commission's finding there was no causal relation between the alleged inhalation of irritants and his present disability and supports the finding that petitioner had not suffered an injury by accident arising out of and in the course of his employment.

This being the situation, whether the commission correctly decided that petitioner's claim was unenforceable because not filed within a year becomes of no consequence.

Award affirmed.

PHELPS, C. J., and STANFORD and LA PRADE, JJ., concur.

UDALL, Justice (concurring).

Because there appears to be a conflict in the evidence, I reluctantly concur in the majority opinion; nevertheless I very strongly feel that the Commission unjustly denied the petitioner compensation.